# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF MICHIGAN

KATHLEEN HAYWARD

Plaintiff,                                                   Case No.

V.                                                              Hon.

STRYKER CORPORATION d/b/a STRYKER,
MEGHAN MENZ, JESSICA SPERO,
KATIE GRAU, DANIELLE PARMELEE,
JESSICA ZAHAROPOULOS,
KENDRA ENGLAND SMITH, and
MATT VANDERWENDE,

Defendants.

---

NICHOLE OMILION (P86380)
JONATHAN R. MARKO (P72450)
MARKO LAW, PLLC
Attorneys for Plaintiff
220 W. Congress, Fourth Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
Email: nichole@markolaw.com

---

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action, not between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred or otherwise disposed of after having been assigned to a Judge in this Court.

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES the above-named Plaintiff, KATHLEEN HAYWARD, by and through her attorneys, MARKO LAW, PLLC, and for her Complaint against the above-named Defendants, states as follows:

## JURISDICTION AND VENUE

1. Plaintiff Kathleen Hayward is a female residing in the State of Michigan.

2. Plaintiff is informed, believes, and thereupon alleges, that Defendant Stryker Employment Company, LLC and/or Stryker Corporation was at all times relevant herein licensed, organized, and/or existing under the laws of the State of Michigan, and regularly conducts business in the State of Michigan, including at 3800 E. Centre Ave, Portage, County of Kalamazoo, State of Michigan. Defendant employs more than 20,000 employees.

3. Defendant Meghan Menz is an individual who, at all times relevant herein, resided in and/or was employed in the State of Michigan, working at 3800 E. Centre Ave, Portage, County of Kalamazoo, State of Michigan, and at all material times acted as Plaintiff's direct manager and supervisor within the scope of her employment with Stryker.

4. Defendant Jessica Spero is an individual who, at all times relevant herein, resided in and/or was employed in the State of Michigan, working at 3800 E. Centre Ave, Portage, County of Kalamazoo, State of Michigan, and at all material times acted as Director of Customer and Employee Experience and a supervisory authority over Plaintiff within the scope of her employment with Stryker.

5. Defendant Katie Grau is an individual who, at all times relevant herein, resided in and/or was employed in the State of Michigan, working at 3800 E. Centre Ave, Portage, County of Kalamazoo, State of Michigan, and at all material times acted as Director of Customer

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: (313) 470-2011

JM MARKO LAW

and Employee Experience and a supervisory authority over Plaintiff within the scope of her employment with Stryker.

6. Defendant Danielle Parmelee is an individual who, at all times relevant herein, resided in and/or was employed in the State of Michigan, working at 3800 E. Centre Ave, Portage, County of Kalamazoo, State of Michigan, and at all material times acted as Director of Customer and Employee Experience and a supervisory authority over Plaintiff within the scope of her employment with Stryker.

7. Defendant Jessica Zaharopoulos is an individual who, at all times relevant herein, resided in and/or was employed in the State of Michigan, working at 3800 E. Centre Ave, Portage, County of Kalamazoo, State of Michigan, and at all material times acted as Human Resource Business Partner for Stryker Medical within the scope of her employment with Stryker.

8. Defendant Kendra England Smith is an individual who, at all times relevant herein, resided in and/or was employed in the State of Michigan, working at 3800 E. Centre Ave, Portage, County of Kalamazoo, State of Michigan, and at all material times acted as Human Resource Business Partner for Stryker Medical within the scope of her employment with Stryker.

9. Defendant Matt Vanderwende is an individual who, at all times relevant herein, resided in and/or was employed in the State of Michigan, working at 3800 E. Centre Ave, Portage, County of Kalamazoo, State of Michigan, and at all material times acted as Human Resource Business Partner for Stryker Medical within the scope of her employment with Stryker.

10. The jurisdiction is proper because the amount in controversy exceeds this Court's jurisdictional limit, not including costs, interests, and attorneys' fees.

11. Venue is proper as Defendant regularly conducts business in this district and the events and omissions giving rise to the claims herein occurred in this district.

### STATEMENT OF FACTS

5. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

6. Hayward began her employment with Stryker on September 24, 2018.

7. On March 12, 2021, Hayward was promoted to the position of Senior Administrative Assistant to the Vice President and General Manager.

8. Hayward performed well in her role, and in April 2022, she applied for and was hired into a different position with the Company- Event Planning Associate.

9. As an Event Planning Associate, Hayward reported to Meghan Menz ("Menz") and her duties included supporting large scale events, managing calendars and inboxes, leading budget tracking efforts, survey management, and managing text message communications.

10. At all times relevant herein, Plaintiff performed her job duties competently and professionally.

11. In late January 2023, Defendant directed Plaintiff to travel to Punta Mita, Nayarit, Mexico for a Stryker business trip to conduct a site visit for an upcoming corporate event.

12. On or about January 29, 2023, Plaintiff departed from Detroit Metropolitan Airport and traveled to Puerto Vallarta, Mexico alongside her co-worker, Katherine Hoff, for the Defendant-directed work trip.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

13. On January 31, 2023, while at the Four Seasons Resort, Punta Mita, Nayarit, Mexico, Plaintiff's co-worker suffered a life-threatening medical emergency, including severe and spontaneous hemorrhaging and loss of consciousness.

14. In the absence of any emergency protocol, training, or meaningful support from Defendant, Plaintiff Kathleen Hayward was forced to serve as her co-worker's sole translator, patient advocate, and surrogate medical decision-maker for all life-saving care decisions during this crisis.

15. At no point did anyone from Defendant contact Plaintiff's emergency contacts during the incident.

16. Plaintiff was repeatedly and involuntarily exposed to her co-worker's bodily fluids throughout the emergency, which lasted for over 51 hours before evacuation was arranged.

17. Throughout the hospitalization at Punta Mita Hospital in Mexico, Plaintiff endured severe language barriers, unsanitary hospital conditions, and financial pressure from hospital staff who repeatedly demanded payment of thousands of dollars every few hours as a condition of continued care, all without any meaningful assistance from Defendant.

18. Defendant Stryker had the ability to arrange a medical airlift via helicopter within the first two hours of the incident; however, Defendant refused to coordinate this option, citing a "lack of protocol," and instead left Plaintiff to manage the crisis alone and without adequate support for over 51 hours.

19. On or about February 2, 2023, an air ambulance transport was finally arranged. Plaintiff accompanied her critically ill co-worker on this transport, which Plaintiff experienced as traumatizing as it involved two young women traveling with three men who spoke minimal

English, administering unknown intravenous medication, and taking photographs of the patient every 15 to 30 minutes throughout the flight.

20. On February 3, 2023, Hayward contacted Menz to let her know that she was home and Hoff was under the care of Spectrum Health in Grand Rapids.  Hayward expressed to Menz how shaken the entire ordeal had left her and asked for some time off to decompress and steady her mental state.

21. Menz approved Hayward's request.

22. On February 10, 2023, Hayward contacted Menz again to let her know she was still not doing well and to request more time off to recover from the traumatic experience in Mexico. Hayward noted that her mental health was poor and that the events in Mexico had severely impacted her.

23. Menz approved the request for additional time off and expressed that if Hayward needed more time, she would need to consider seeking an "official" leave of absence.

24. On February 20, 2023, Hayward returned to work. Upon her return, Hayward assumed the vast majority of Hoff's duties while Hoff remained on leave to recover from her injuries.

25. Shortly after Hayward's return to work, Menz directed her to return to Mexico to execute the events that Hoff was responsible for prior to her injury. Hayward told Menz she was uncomfortable returning to Mexico so soon, but Menz insisted that she go because the department was short-staffed with Hoff out on leave and another member about to begin parental leave.

26.  Hayward complied and traveled to Mexico to oversee the event.

27. In May 2023, Jessica Spero ("Spero") was hired as Hayward's new direct manager. From then, Hayward reported to Spero, who reported to Menz.

Page **6** of **25**

28. In May 2023, Hayward met with Spero and Menz to discuss her responsibilities in preparation for a national sales meeting to be held in January 2024. Hayward explained that she was finding it difficult to manage her responsibilities, along with Hoff's and other teammates, which effectively left her in the unworkable position of trying to fulfill three roles at once.

29. On or about May 17, 2023, Stryker promoted Hayward to the position of Meeting Planning Specialist, which aimed to reflect the additional responsibilities she had already assumed and the competence she demonstrated in carrying them out.

30. On or about June 2, 2023, Hayward and Menz met at Hayward's home to discuss the lingering effects she was experiencing from the incident in Mexico and how taking on multiple team members' responsibilities was contributing to severe PTSD and burnout symptoms. Hayward told Menz that no one from Stryker Human Resources had reached out to discuss the traumatic experience that occurred on the work trip, but Menz dismissed Hayward's concern and took no meaningful steps to correct Stryker's treatment of the incident.

31. Menz told Hayward that the workload was normal for the field and that Hayward's recent promotion should make her feel better.

32. On or about June 5, 2023, Menz texted Hayward to instruct her to reach out to Human Resources about initiating a leave of absence to address the mental health issues she was experiencing.

33. Hayward contacted Human Resources to discuss taking a leave of absence for mental health reasons.

34. On June 9, 2023, Hayward visited a walk-in clinic to be evaluated for the mental anguish she was experiencing, which she attributed to the traumatic events she experienced with Hoff in Mexico.

35. On June 10, 2023, Hayward began a short-term disability leave of absence, and Stryker Human Resources (Marites Toro) instructed her not to file a claim for workers' compensation.

36. In late November of 2023, while Hayward was still on leave, Spero invited her to a holiday party, but insisted she would need to submit a note from her doctor confirming that she was fit to attend. The party was scheduled for December 5, 2023, with Hayward's return-to-work already slated for December 8, 2023.

37. Hayward's medical leave of absence ended on or about December 7, 2023.

38. Stryker placed Hayward on an "administrative" leave of absence from December 8, 2023, until December 11, 2023.

39. On December 12, 2023, Hayward returned to work. Upon her return, Hayward learned that Stryker had changed her job duties.

40. On December 18, 2023, Hayward reported to Spero concerns that Hoff was being discriminated and retaliated against because of her disability and for taking a leave of absence. Spero dismissively brushed off Hayward's concerns and followed up with an email reprimanding Hayward for speaking on behalf of Hoff and for making comments indicated that she and Hoff had "survived" the traumatic events in Mexico almost a year earlier.

41. On January 9, 2024, Hayward submitted her annual self-evaluation.

42. In January 2024, Spero and others excluded Hayward from weekly team meeting prior to the National Sales Meeting, which caused her to miss the opportunity to obtain important information prior to the event.

43. In January 2024, at the National Sales Meeting, Hayward was asked to participate in an investigation regarding Hoff's dismissal. Hayward was told that she needed to change guest rooms and was not permitted to retrieve her coat from the hotel room where she had been staying until Hoff vacated the property. The stress of the situation exacerbated Hayward's PTSD symptoms.

44. In February 2024, Hayward received her official performance evaluation, where she received criticism for, among other things, her close relationship with Hoff and her reported concerns about inappropriate actions she observed in the workplace. In performance evaluation parlance, Stryker criticized Hayward's "professional communication", "office demeanor", and her propensity for "being a good teammate." Further, Hayward's official performance evaluation discouraged her from discussing wages in the workplace, noted her approved FMLA leave of absence, and remarked about concerns she raised regarding inappropriate relationships in the workplace.

45. Hayward told Spero that she disagreed with Stryker's assessment of her performance. Spero advised Hayward that she could submit additional comments about her performance but provided no justification for Stryker's critical assessment of Hayward, particularly because this evaluation was for the calendar year when Hayward received a promotion and many glowing accolades.

46. Hayward continued to experience slights, insults, and unjustified criticisms, which Stryker was aware of and did nothing to correct.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

47. The working conditions to which Hayward was subjected exacerbated her mental health issues were both subjectively and objectively intolerable. As the weeks wore on, Hayward felt an increasing pressure, brought about by the intolerable working conditions, to resign from her position at Stryker.

48. On March 18, 2024, Hayward informed Spero that she felt forced to resign because of the hostile environment she was being forced to endure, despite efforts to address these issues through appropriate channels, which she reported "undermines my professional growth [and] also compromises my mental and emotional health."

49. In her resignation letter to Defendant's Human Resource Business Partner, Jessica Zaharopoulos, Plaintiff stated that "recent experiences of harassment, negligence, and a pervasive toxic culture have made it untenable for me to continue my employment here," and further described "a retaliatory atmosphere, coupled with instances of inappropriate behavior and poor leadership."

50. Plaintiff further stated in her resignation letter that the hostile environment she had endured "not only undermines my professional growth but also compromises my mental and emotional health."

51. Defendant's deliberate conduct created working conditions so intolerable that a reasonable person in Plaintiff's position would feel compelled to resign, amounting to a constructive discharge of Plaintiff's employment.

52. As a result of Defendants' actions and inactions, Plaintiff has suffered and will continue to suffer extensive damages, including but not limited to the following:

   a. Economic damages including lost wages and loss of future income;

   b. Damage to professional reputation;

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

    c. Stress;

    d. Humiliation;

    e. Embarrassment;

    f. Emotional damages;

    g. Mental anguish;

    h. Non-economic damages;

    i. Exemplary damages; and

    j. All other injuries to be discovered throughout discovery.

## COUNT I- VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Disability Discrimination)

53. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

54. At all material times, Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

55. Plaintiff's disability, Posttraumatic Stress Disorder, Chronic, substantially limits one or more major life activities, including but not limited to concentrating, sleeping, memory, thinking, and the neurological functions of the brain.

56. Plaintiff's disability symptoms began on January 31–February 2, 2023, arising from a traumatic work-related incident in Mexico. Plaintiff sought professional medical support beginning June 9, 2023. Ms. Hayward was prescribed medication on July 20, 2023, which started that same day, and has since continued treatment with her physicians, therapists, and psychologists.

57. Stryker was aware of Plaintiff's condition through direct communications with management and Human Resources beginning in February 2023.

58. Despite Plaintiff's demonstrated qualification for her position, evidenced by her promotion to Meeting Planning Specialist in May 2023 while simultaneously absorbing multiple colleagues' workloads, Defendants subjected Plaintiff to adverse employment actions because of her disability, including changing her job duties upon return from medical leave, issuing an unjustified negative performance evaluation, excluding her from team meetings and activities, and directing her to participate in a workplace investigation in circumstances known to exacerbate her disability.

59. Defendants' actions were motivated, at least in part, by Plaintiff's disability and their unwillingness to support an employee with a serious mental health condition acquired during a Stryker-directed work trip.

60. Defendants' conduct constitutes disparate treatment discrimination on the basis of disability in violation of the ADA.

61. Defendants' conduct was willful, intentional, and/or made in reckless disregard of Plaintiff's rights under the ADA.

62. As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered and continues to suffer damages including lost wages and lost earning capacity, compensatory damages for emotional distress, humiliation, and mental anguish, punitive damages, and reasonable attorney fees and costs.

### COUNT II- VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Hostile Work Environment/Harassment)

63. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

64. At all material times, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

65. Following Plaintiff's return from medical leave on December 12, 2023, Defendants subjected Plaintiff to a pervasive pattern of harassment related to her disability and her use of medical leave. This conduct included: changing Plaintiff's job duties upon her return without justification; excluding her from pre-event team meetings; requiring her to participate in a workplace investigation in circumstances that directly exacerbated her known PTSD; issuing a negative performance evaluation that expressly referenced Plaintiff's approved FMLA leave of absence; and criticizing Plaintiff for conduct, including "office demeanor" and "professional communication" that was connected to her disability-related experiences and her protected advocacy on behalf of a disabled colleague.

66. Stryker's January 2024 performance evaluation reprimanded Plaintiff for conduct that occurred during her period of approved protected leave, including reprimanding her for not having expense reports submitted "on time," although management was responsible for still expensing them during her leave, which they failed to do.

67. The harassment to which Plaintiff was subjected was severe and/or pervasive, altered the terms and conditions of her employment, and was directly connected to her disability and her use of disability-related leave.

68. Defendants knew of the hostile conditions and failed to take prompt or adequate remedial action.

69. Defendants' conduct was willful, intentional, and/or made in reckless disregard of Plaintiff's rights under the ADA.

70. As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered and continues to suffer damages including lost wages and lost earning capacity, compensatory damages for emotional distress, humiliation, and mental anguish, punitive damages, and reasonable attorney fees and costs.

## COUNT III- VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Retaliation)

71. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

72. At all material times, Plaintiff was a qualified individual with a disability within the meaning of the ADA and engaged in protected activity thereunder.

73. On December 18, 2023, Plaintiff engaged in protected activity by reporting to her supervisor, Jessica Spero, concerns that her colleague Katie Hoff was being discriminated against and retaliated against because of her disability and her use of a medical leave of absence.

74. Spero's retaliatory response was immediate: immediately following Plaintiff's report of protected activity on December 18, 2023, Spero issued Plaintiff a written reprimand for conduct that had not previously been addressed, including a comment Plaintiff made regarding the team's survival of the Mexico incident. Plaintiff's contemporaneous notes reflect that Spero had not initiated this meeting, but instead, Plaintiff had reached out to

Spero on Sunday, December 17, 2023, to discuss her concerns, and that Spero raised the reprimand only after Plaintiff raised concerns about discrimination.

75. Following Plaintiff's protected activity, Defendants subjected her to a continuous pattern of retaliatory conduct, including: exclusion from weekly team meetings prior to the National Sales Meeting in January 2024; requiring her participation in a workplace investigation that caused her distress; issuing a negative performance evaluation that referenced her protected leave and criticized her for raising concerns about workplace discrimination; and manufacturing or padding Plaintiff's file with pretextual criticisms to manufacture grounds for constructive discharge.

76. A causal connection exists between Plaintiff's protected activity and the adverse employment actions she suffered, as evidenced by the close temporal proximity between her complaint and Defendants' retaliatory conduct, and by the internally inconsistent and pretextual nature of the criticism leveled against Plaintiff.

77. Defendants' retaliatory conduct was a proximate cause of Plaintiff's constructive discharge on March 18, 2024.

78. Defendants' conduct was willful, intentional, and/or made in reckless disregard of Plaintiff's rights under the ADA.

79. As a direct and proximate result of Defendants' violations of the ADA, Plaintiff has suffered and continues to suffer damages including lost wages and lost earning capacity, compensatory damages for emotional distress, humiliation, and mental anguish, punitive damages, and reasonable attorney fees and costs.

## COUNT IV- VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT
### (Interference and Retaliation)

80. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

81. At all material times, Plaintiff was an eligible employee within the meaning of the FMLA, 29 U.S.C. § 2601 et seq., and Defendants constituted a covered employer under the FMLA.

82. Plaintiff communicated with Stryker's HR Leaves team on June 5, 2023, to initiate FMLA leave in connection with her acquired mental health disability. Plaintiff began her approved leave of absence on June 10, 2023. Plaintiff's leave continued through December 12, 2023, when she returned to work, a period of approximately six months.

83. Upon Plaintiff's return from FMLA leave, Defendants interfered with Plaintiff's FMLA rights by changing her job duties, subjecting her to an unjustified negative performance evaluation for conduct that arose during her period of protected leave, and creating working conditions designed to make her continued employment intolerable.

84. Defendants' 2023 performance evaluation expressly referenced Plaintiff's approved FMLA leave of absence as a negative factor, noting: "Kate did take leave from July 10 - December 12, 2023" in the context of critical comments, and criticizing expense-related issues arising from transactions during the period of Plaintiff's leave, during which management had assumed delegated authority over Plaintiff's accounts.

85. Defendants' consideration of Plaintiff's protected FMLA leave in her performance evaluation constitutes direct evidence of interference with and retaliation for Plaintiff's exercise of FMLA rights.

86. Defendants' retaliatory and interfering conduct was a proximate cause of Plaintiff's constructive discharge on March 18, 2024.

87. Defendants' conduct was willful, intentional, and/or made in reckless disregard of Plaintiff's rights under the FMLA.

88. As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has suffered and continues to suffer damages including lost wages, lost benefits, lost earning capacity, liquidated damages, and reasonable attorney fees and costs.

## COUNT V- VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (Constructive Discharge)

89. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

90. At all material times, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

91. Following Plaintiff's return from medical leave on December 12, 2023, Defendants deliberately altered the terms, conditions, and privileges of Plaintiff's employment by changing her duties, excluding her from team meetings, subjecting her to retaliatory performance evaluations, and requiring her participation in a workplace investigation that directly exacerbated her known disability, all of which Stryker knew or should have known would create intolerable working conditions for a person with Plaintiff's documented mental health condition.

92. The working conditions Plaintiff endured were both subjectively intolerable to Plaintiff and objectively intolerable to any reasonable person in Plaintiff's position, as evidenced by Plaintiff's resignation letter of March 18, 2024, in which she described the workplace as characterized by "harassment, negligence, and a pervasive toxic culture" and a "retaliatory

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

atmosphere" that made it "impossible for me to perform my duties effectively and maintain my well-being."

93. Defendants' deliberate conduct created conditions so intolerable that a reasonable person in Plaintiff's position would feel compelled to resign, and Plaintiff did resign on March 18, 2024, constituting a constructive discharge actionable under the ADA.

94. Defendants' conduct was willful, intentional, and/or made in reckless disregard of Plaintiff's rights under the ADA.

95. As a direct and proximate result of Defendants' constructive discharge of Plaintiff in violation of the ADA, Plaintiff has suffered and continues to suffer damages including lost wages and lost earning capacity, compensatory damages for emotional distress, humiliation, and mental anguish, punitive damages, and reasonable attorney fees and costs.

## COUNT VI- VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### (Disability Discrimination)

96. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

97. At all material times, Plaintiff was an employee and a person with a disability within the meaning of the Michigan Persons with Disabilities Civil Rights Act ("PWDCRA"), Mich. Comp. Laws § 37.1101 et seq.

98. Plaintiff's disability, Posttraumatic Stress Disorder, Chronic, constitutes a determinable physical or mental characteristic that substantially limits one or more of Plaintiff's major life activities, including concentrating, sleeping, memory, thinking, and neurological function.

99. The PWDCRA prohibits an employer from discharging or otherwise discriminating against an individual with respect to compensation or the terms, conditions, or privileges of employment because of a disability that is unrelated to the individual's ability to perform the duties of the particular job or position. Mich. Comp. Laws § 37.1202(1)(b).

100. Plaintiff was qualified for her position as Meeting Planning Specialist, as demonstrated by her promotion to that role in May 2023 and by her performance of expanded duties in the months prior. Plaintiff's disability did not affect her ability to perform the essential functions of her position.

101. Defendants discriminated against Plaintiff on the basis of her disability by changing her job duties upon return from medical leave, subjecting her to unwarranted negative performance evaluations, excluding her from team meetings, and subjecting her to adverse terms and conditions of employment materially different from those experienced by non-disabled comparators.

102. Defendants' conduct constitutes disability discrimination in violation of Mich. Comp. Laws § 37.1202(1)(b).

103. Defendants' conduct was willful, intentional, and/or made in reckless disregard of Plaintiff's rights under the PWDCRA.

104. As a direct and proximate result of Defendants' violations of the PWDCRA, Plaintiff has suffered and continues to suffer damages including economic damages (lost wages and lost earning capacity), non-economic damages (emotional distress, humiliation, mental anguish), exemplary damages, and reasonable attorney fees and costs pursuant to Mich. Comp. Laws § 37.1606.

## COUNT VII- VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### (Constructive Discharge)

105.     Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

106.     At all material times, Plaintiff was a person with a disability within the meaning of the PWDCRA, Mich. Comp. Laws § 37.1101 et seq.

107.     Following Plaintiff's return from protected medical leave on December 12, 2023, Defendants deliberately and systematically altered the terms and conditions of Plaintiff's employment, changing her duties, excluding her from team activities, engineering a negative performance record, and requiring her to participate in activities that directly exacerbated her known disability, with the purpose and effect of making continued employment intolerable.

108.     The conditions Plaintiff endured were both subjectively and objectively intolerable, as reflected in her March 18, 2024, resignation letter describing "harassment, negligence, and a pervasive toxic culture" and "a retaliatory atmosphere" that made it "impossible for me to perform my duties effectively and maintain my well-being."

109.     Defendants deliberately created working conditions so intolerable that a reasonable person in Plaintiff's position would feel compelled to resign, and Plaintiff did resign on March 18, 2024, constituting a constructive discharge that is treated as a termination of employment under Michigan law.

110.     Defendants' constructive discharge of Plaintiff was motivated by her disability and constitutes a violation of the PWDCRA.

111.    Defendants' conduct was willful, intentional, and/or made in reckless disregard of Plaintiff's rights under the PWDCRA.

112.    As a direct and proximate result of Defendants' violations of the PWDCRA, Plaintiff has suffered and continues to suffer damages including economic damages (lost wages and lost earning capacity), non-economic damages (emotional distress, humiliation, mental anguish), exemplary damages, and reasonable attorney fees and costs pursuant to Mich. Comp. Laws § 37.1606.

**COUNT VIII- VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**
**(Hostile Work Environment/Harassment)**

113.    Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

114.    At all material times, Plaintiff was a person with a disability within the meaning of the PWDCRA, Mich. Comp. Laws § 37.1101 et seq.

115.    The PWDCRA prohibits employers from permitting a hostile work environment based upon an employee's disability. Mich. Comp. Laws § 37.1202(1)(a).

116.    Upon Plaintiff's return from medical leave, Defendants subjected Plaintiff to unwelcome conduct related to her disability and use of disability-related leave that was severe and/or pervasive, including: unwarranted changes to her job duties; exclusion from team meetings; a negative performance evaluation expressly referencing her protected

leave; written reprimand following Plaintiff's good-faith report of disability discrimination; and involvement in a workplace investigation in circumstances known to worsen Plaintiff's PTSD.

117. The harassing conduct was intended to and did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and offensive work environment connected to Plaintiff's disability.

118. Defendants had actual or constructive knowledge of the hostile environment and failed to take prompt and adequate remedial action.

119. Defendants are responsible for the hostile work environment created by their agents, managers, and supervisors within the meaning of the PWDCRA.

120. Defendants' conduct was willful, intentional, and/or made in reckless disregard of Plaintiff's rights under the PWDCRA.

121. As a direct and proximate result of Defendants' violations of the PWDCRA, Plaintiff has suffered and continues to suffer damages including economic damages (lost wages and lost earning capacity), non-economic damages (emotional distress, humiliation, mental anguish), exemplary damages, and reasonable attorney fees and costs pursuant to Mich. Comp. Laws § 37.1606.

### COUNT IX- VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT
### (Retaliation)

122. Plaintiff, by reference, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

123. At all material times, Plaintiff was a person with a disability within the meaning of the PWDCRA and engaged in activity protected thereunder.

124.     The PWDCRA prohibits an employer from retaliating or discriminating against a person because the person has opposed a violation of the Act or has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under the Act. Mich. Comp. Laws § 37.1602(a).

125.     On December 18, 2023, Plaintiff engaged in protected activity by reporting to her supervisor, Jessica Spero, her good-faith belief that colleague Katie Hoff was being discriminated against and retaliated against on the basis of her disability and her use of medical leave, conduct Plaintiff reasonably believed violated the PWDCRA.

126.     Defendants' retaliatory response was immediate: Spero issued Plaintiff a written reprimand following Plaintiff's report, targeting a comment Plaintiff made about the team having "survived" the Mexico incident, a topic directly related to Plaintiff's own disability and the protected activity she had just reported.

127.     Defendants thereafter subjected Plaintiff to a continuing pattern of retaliation, including exclusion from team meetings, forced participation in an adverse workplace investigation, a negative performance review expressly tied to her protected leave and her advocacy on behalf of a disabled colleague, and the engineering of intolerable working conditions that proximately caused Plaintiff's constructive discharge on March 18, 2024.

128.     A causal connection exists between Plaintiff's protected activity and the adverse employment actions she suffered, evidenced by the immediate temporal proximity of the retaliatory reprimand and the escalating pattern of adverse action that followed.

129.     Defendants' conduct was willful, intentional, and/or made in reckless disregard of Plaintiff's rights under the PWDCRA.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7777
F: ((313) 470-2011

MARKO LAW

130.       As a direct and proximate result of Defendants' violations of Mich. Comp. Laws § 37.1602(a), Plaintiff has suffered and continues to suffer damages including economic damages (lost wages and lost earning capacity), non-economic damages (emotional distress, humiliation, mental anguish), exemplary damages, and reasonable attorney fees and costs pursuant to Mich. Comp. Laws § 37.1606.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter a judgment against Defendants in such an amount as the trier of fact shall deem fair and just, together with interest, costs, attorney fees, and for such other and further relief as this Honorable Court may deem appropriate in equity, fairness, and good conscience.

Respectfully submitted,

*/s/ Nichole Omilion*
Nichole Omilion (P86380)
**MARKO LAW, PLLC**
220 W Congress, Fourth Floor
Detroit, MI 48226
(313) 777-7777 / Fax: (313) 470-2011
Dated: June 16, 2026                    Email: nichole@markolaw.com

## PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **June 16, 2026**, via:

☐ U.S. Mail                    ☐ Fax
☐ Hand Delivered               ☐ Overnight Carrier
☐ Certified Mail               ☐ Other: Mi-FILE Truefiling
☐ ECF System                   ☐ Email

*/s/ Ariel Laster*

Page **24** of **25**

## UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF MICHIGAN

KATHLEEN HAYWARD,

Plaintiff,                                                Case No.
v.                                                           Hon.

STRYKER CORPORATION d/b/a STRYKER,
MEGHAN MENZ, JESSICA SPERO,
KATIE GRAU, DANIELLE PARMELEE,
JESSICA ZAHAROPOULOS,
KENDRA ENGLAND SMITH, and
MATT VANDERWENDE,

Defendant.

_____

NICHOLE OMILION (P86380)
JONATHAN R. MARKO (P72450)
MARKO LAW, PLLC
Attorneys for Plaintiff
220 W. Congress, Fourth Floor
Detroit, MI 48226
P: (313) 777-7777 / F: (313) 470-2011
nichole@markolaw.com

_____

## **DEMAND FOR TRIAL BY JURY**

NOW COMES the above-named Plaintiff, KATHLEEN HAYWARD, by and through her

attorneys, MARKO LAW, PLLC, and hereby demand a trial by jury in the above-captioned matter.

**MARKO LAW, PLLC**

*/s/ Nichole Omilion*
Nichole Omilion (P86380)
*Attorney for Plaintiff*
220 W. Congress, 4th Fl.
Detroit, MI 48226
P: (313) 466-2785/
Date: June 16, 2026                                   F: (313) 771-5785